UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN WILLIAMS, FREDDIE SINKLER, | : | |
| Plaintiffs | : | CIVIL ACTION NO. 3:19-1083 |
| v. | : | (JUDGE MANNION) |
| WARDEN BRIAN CLARK, *et al.*, | : | |
| Defendants | : | |

**MEMORANDUM**

**I. Background**

Plaintiffs, both inmates, formerly confined in the Dauphin County Prisons, Harrisburg, filed the above captioned civil rights action pursuant to 42 U.S.C. § 1983[1] (Doc. 1). The named Defendants are Warden Brian Clark, Treatment Officer John Addison, and Security Officer Robert Lucas.

Plaintiffs' complaint raises a bevy of claims stemming from their confinement at the Dauphin County Prison ("DCP"). (Doc. 1). Specifically, Plaintiffs allege that they were subject to the following inhumane living

---

[1] Subsequent to the filing of the above captioned action, Plaintiff, Freddie Sinkler was released from custody and resides at 210 Penn Street, Highspire, Pennsylvania 17034. (See Doc. 54). The Court has had numerous mailings addressed to Plaintiff, John Williams, returned as undeliverable, stating that Williams was released, and no forwarding address was indicated. (See Docs. 35, 39, 51, 52). Because Williams has an obligation to keep the Court informed of his address change, and has failed to do so, the Court deems Plaintiff to have abandoned the lawsuit.

conditions, including: a lack of adequate ventilation inside the prison, a practice of requiring inmates to eat meals inside their cells, a practice of requiring inmates to remain in their cells for 21 hours each day, the walls of the prison are "covered in filth," (Doc. 1), a lack of adequate means for contacting correctional officers when an emergency arises, inmates are sometimes deprived of a shower for over a week, the soap provided to inmates "eats the flesh off of [their] skin," Id., goods at the prison commissary are overpriced, inmates' cash is confiscated upon arrival at the prison, inmates are forced to sleep in old, rusty bunk beds that release harmful particulate into the air, the prison mixes together sewage and drinking water for use by the inmates, prison officials do not provide year-round outdoor recreation, the prison's meal schedule results in inmates going without food for twelve hours each day, indigent inmates are not provided with shower shoes or undergarments until they have resided at the prison for two months' time, "county and state inmates" are not segregated, regardless of their security designation, Id., the Prison is overcrowded such that "not every inmate sleeps in a dorm or a cell," Id., "trusty" inmates are overworked and underpaid, food provided at the prison is fattening and contains insalubrious female hormones, inmates are subject to random beatings by prison staff, in-cell toilets limit the number of times inmates may flush them, inmates sometimes remain in the pre-classification cell block for up to a week upon

entry into the prison, food residue is visible on trays used to serve inmate meals, sick inmates are allowed to mingle with healthy inmates, inmates are only allowed to clean their cells twice per week, and "religious practice[s] are being abused." Id. Plaintiffs also allege that indigent inmates are not provided with deodorant or toothpaste until one month after they enter the prison, and must wait two months to receive undergarments, during which time these inmates must "prove" their indigence. Id. Finally, Plaintiffs object to the prison's practice of charging inmates for room and board. Id.

Thus, Plaintiffs filed the instant action seeking to be "compensated for living under these conditions, from harm [their] body has been introduced to for the past nine months [they've] been incarcerated in Dauphin County Prison." Id.

Specifically, they claim that Defendant, Warden Clark's "job is to make sure, [Plaintiffs] health safety as well as [their] will being are taken care of as long as [they are] in his custody." Id.

Plaintiffs claim that Defendant, John Addison, "is responsible to make sure that [Plaintiffs are] in a clean and healthy environment as well", while "setting forth programs that really rehabilitate [Plaintiffs'] lives" and "creating jobs that pay the inmates in prison." Id.

Finally, Plaintiffs claim that Defendant, Robert Lucas' "job is to provide security" and "make the environment safe, healthy and livable." Id.

- 3 -

In addition to compensatory damages, Plaintiffs seek "to be treated fairly and like human beings are supposed to be treated" and to be "removed from the county prison while in the process of this lawsuit pending." Id.

Presently before the Court is Defendants' motion for failure to state a claim. (Doc. 45). The motion has been fully briefed and is ripe for disposition. For the reasons that follow, the Court will grant Defendants' motion to dismiss.

## II. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6).

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The

- 4 -

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir. 2009) (*per curiam*).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief"." Id. at 211 (quoted case omitted).

In addition, because Plaintiffs complain about "prison conditions," the screening provisions of 42 U.S.C. §1997e apply, as do the screening provisions of 28 U.S.C. §1915(e), given that they were granted *in forma pauperis* status to pursue this suit. The court's obligation to dismiss a complaint under the PLRA screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to

dismiss. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n. 6 (9th Cir. 2000). Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may nonetheless *sua sponte* rest its dismissal upon such ground pursuant to the screening provisions of the PLRA. See Lopez; Dare v. U.S., Civil No. 06-115E, 2007 WL 1811198, at *4 (W.D. Pa. June 21, 2007), aff'd, 264 Fed Appx. 183 (3d Cir. 2008).

      Finally, the Court may dismiss claims based on an affirmative defense if the affirmative defense is obvious from the face of the complaint. See Ray v. Kertes, 285 F.3d 287, 297 (3d Cir. 2002) (indicating that "[a]s a general proposition, *sua sponte* dismissal is inappropriate unless the basis is apparent from the face of the complaint" and concluding that dismissal was inappropriate because the plaintiff's failure to exhaust was not apparent from the face of the complaint). The Court may also consider matters of public record. Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Because Plaintiffs are proceeding *pro se*, the Court construes their allegations liberally. Higgs v. Att'y Gen., 655 F.3d 333, 339 (3d Cir. 2011).

III.  **Discussion**

    a. **Standing**

Defendants move for dismissal, *inter alia*, on the basis that Plaintiffs lack standing to sue over conditions of confinement that do not affect them personally. The Court agrees.

"Article III... gives the federal courts jurisdiction over only 'cases and controversies,' and the doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process." Whitmore v. Arkansas, 495 U.S. 149, 154-55 (1990). The Standing doctrine distinguishes between "jurisdictional" and "prudential" rules of standing. The three jurisdictional rules of standing sketch out the minimum requirements for a "case or controversy" under Article III; they are "injury in fact... causation, and redressability." Id. at 155. By contrast, the prudential rules of standing are judicially created doctrines based on policy judgments about the proper role of the courts. One such rule is that a litigant "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Warth v. Seldin, 422 U.S. 490, 499 (1975)). In view of this rule, "courts have held consistently that an inmate does not have standing to sue on behalf of his fellow prisoners." Weaver v. Wilcox, 650 F.2d 22, 27 (3d Cir. 1981)(collecting cases).

A review of the complaint reveals that Plaintiffs are not the proper parties to assert claims with respect to a number of the allegedly inhumane prison conditions. For example, Plaintiffs assert that DCP "houses inmates pas[t] the capacity," resulting in some inmates sleeping outside their cells, but do not allege any facts showing they are among the affected inmates. (Doc. 1). Plaintiffs also claim that "trusty" inmates (presumably, those with jobs at the Prison) are overworked without sufficient pay, Id. ("some inmate[s] work up to 10 hours 7 days of a week"), but again fail to allege that they themselves are "trusty's." Plaintiffs request that "camera footage... be investigated" because certain unidentified "inmates [are] being abused by staff." Id. Not only does this allegation fail to plead facts showing Plaintiffs were victims of the alleged abuse—it also generally fails to plead with clarity sufficient to satisfy plausibility pleading. See Fed.R.Civ.P. 8(a) (requiring a Plaintiff to set forth a "short and plan statement showing that the pleader is entitled to relief"). Finally, Plaintiffs complain that inmates sometimes spend up to a week in the Prison's "classification block" before being transferred elsewhere. (Doc. 1). Aside from the fact that the harm caused by being incarcerated in this section of the Prison as opposed to any other is not readily apparent, Plaintiffs plead no facts showing they themselves spent an inordinate amount of time in the classification block. Thus, the foregoing claims rest on allegations that clearly show Plaintiffs are attempting to assert

the rights of inmates who have not been identified and who are not parties to this suit. Accordingly, these claims are to be dismissed for lack of standing.

### b. Exhaustion of Administrative Remedies

In addition to Plaintiffs' lack of standing to assert the claims raised in their complaint, the Court finds that even if Plaintiffs were to establish standing, the face of Plaintiffs' complaint reveals that Plaintiffs have not exhausted their administrative remedies with respect to any claims raised in the complaint.

In pertinent part, the PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a). Under the PLRA, exhaustion of administrative remedies is required for all actions concerning prison conditions brought under federal law. See 42 U.S.C. §1997e(a); Woodford v. Ngo, 126 S.Ct. 2378 (2006). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002); Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). "[I]t is beyond the

power of [any] court ... to excuse compliance with the exhaustion requirement." Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000). The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. Woodford, 126 S.Ct. at 2387. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 2386. Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004).

This court in the past has taken judicial notice of Dauphin County Prison's grievance procedures. Funk v. DeRose, 2012 WL 6966712, at *8 (M.D. Pa. Nov. 28, 2012) report and recommendation adopted, 2013 WL 393868 (Jan. 31, 2013); see also Shakuur v. Costello, 230 Fed.Appx. 199, 201 (3d Cir. 2007)(taking judicial notice of Philadelphia Prison System's grievance procedures). This court has explained the Dauphin County grievance procedure as follows:

> The grievance appeal process that Dauphin County Prison inmates are required to follow, as set forth in the Inmate Handbook, involves four (4) steps: (1) the submission of a grievance for review and determination by the Warden; (2) an appeal of any decision to the Chairman of the Dauphin County

> Prison Board of Inspectors; (3) an appeal of the Chairman's decision to the full Dauphin County Prison Board of Inspectors; and (4) an appeal from the Prison Board's decision to the Dauphin County Solicitor.

Sawyers v. Brown, 2014 WL 407337, at *2 (M.D. Pa. Feb. 3, 2014). The burden of demonstrating exhaustion rests with plaintiffs. See Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000). Plaintiffs admit on the face of their complaint that they failed to exhaust their claims. (See Doc. 1).

Specifically, Plaintiffs state that they "wrote a grievance back in November 12, 2018" and "never received a reply." Id.

To the extent that Plaintiffs submitted a grievance to the appropriate official and did not receive a response, the procedure contemplates several tiers of review and the grievance review system is not exhausted when an inmate files a grievance and then takes no other action through established channels when a grievance is not resolved to his satisfaction. Plaintiffs' next step would have been to appeal the Warden's decision, or lack of one, to the Chairman of the Dauphin County Prison Board of Inspectors. The Plaintiffs' complaint readily reveals that they failed to do so. Id. Thus, by Plaintiffs' own admission, it is clear that Plaintiffs simply failed to properly exhaust administrative remedies. The failure to pursue the appropriate administrative process with respect to their claims precludes the litigation of such claims.

In Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004), our Court of Appeals held that congressional policy objectives were best served by interpreting the statutory "exhaustion requirement to include a procedural default component." The court further ruled that procedural default under §1997e(a) is governed by the applicable prison grievance system, provided that the "prison grievance system's procedural requirements [are] not imposed in a way that offends the Federal Constitution or the federal policy embodied in §1997e(a)." Id. at 231, 232.

In this case, the face of Plaintiffs' complaint readily reveals that they failed to appeal the response, or lack thereof, to the final review. Thus, Plaintiffs have sustained a procedural default.

Spruill cited with approval the Seventh Circuit decision in Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). Spruill, 372 F.3d at 231. In Pozo, the Seventh Circuit ruled that "to exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Pozo, 286 F.3d at 1025 (emphasis added). Plaintiffs offer no evidence to justify their failure to appeal the lack of response by the Warden to their grievance. Thus, Plaintiffs are now foreclosed from litigating their claims in this Court.

In Spruill, the Third Circuit found that a procedural default component to the exhaustion requirement served the following congressional objectives:

"(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits." 372 F.3d at 230. In Pusey v. Belanger, No. Civ. 02-351, 2004 WL 2075472 at *2-3 (D. Del. Sept. 14, 2004), the court applied Spruill to dismiss an inmate's action for failure to timely pursue an administrative remedy over the inmate's objection that he did not believe the administrative remedy program operating in Delaware covered his grievance. In Berry v. Kerik, 366 F.3d 85, 86-88 (2d Cir. 2004), the court affirmed the dismissal of an inmate's action with prejudice where the inmate had failed to offer appropriate justification for the failure to timely pursue administrative grievances. In Ross v. County of Bernalillo, 365 F.3d 1181, 1186 (10th Cir. 2004), the court embraced the holding in Pozo, stating that "[a] prison procedure that is procedurally barred and thus is unavailable to a prisoner is not thereby considered exhausted." These precedents support this Court's decision to dismiss the compliant for failure to exhaust administrative remedies.

## VI. Conclusion

For the forgoing reasons, Defendants' motion to dismiss for lack of standing will be granted and Plaintiffs' complaint will be dismissed without

prejudice for failure to exhaust administrative remedies prior to filing the instant action.

    An appropriate order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: April 15, 2021**
19-1083-01